Boccia v Murphy (2003 NY Slip Op 23911)

Boccia v Murphy

2003 NY Slip Op 23911 [2 Misc 3d 549]

December 4, 2003

Supreme Court, Queens County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 7, 2004

[*1]
Mark Boccia et al., Plaintiffs,
v
Maureen Murphy et al., Defendants. (And Another Action.)
Supreme Court, Queens County, December 4, 2003

APPEARANCES OF COUNSEL

Honig, Mongioi, Monahan & Sklavos, LLP, Carle Place (Robert A. Monahan of counsel), for David Dillane. Murphy & Lavin, Bayside (Thomas J. Lavin of counsel), for Maureen Murphy.

{**2 Misc 3d at 549} OPINION OF THE COURT

Arnold N. Price, J.

{**2 Misc 3d at 550}
I. The Relevant Facts

David Dillane and Maureen Murphy decided to purchase a business which they intended to, and did, operate under the name of 711 BB Bar Ltd. (the corporation). At the closing, the corporation executed two notes, one in the amount of $100,000, and another in the amount of $25,000. Ultimately, the plaintiffs commenced an action against Dillane, Murphy and the corporation to collect amounts owed on the notes (the [*2]underlying action).[FN1] 

During the course of the underlying action, Dillane and Murphy were represented by the same counsel pursuant to their jointly-executed retainer agreement. On June 2, 1998, a jury rendered a verdict in favor of the plaintiffs in the underlying action and against Murphy, Dillane and the corporation. The judgment docket book entry of the same date reflects a judgment in the amount of $155,000.
Prior to the entry of judgment, on May 11, 1999, Murphy and the plaintiffs agreed to reduce the judgment from $155,000 to $120,000 plus interest, pursuant to a stipulation modifying the judgment. In that stipulation, Murphy agreed that she would: (1) pay $55,000 at a closing on the sale of real property that she owned in Queens County; (2) pay the balance of $65,000 within six months of the date of that closing; (3) permit the filing of a mortgage lien on separate property owned by her to secure the balance of $65,000; and (4) pay interest at the rate of nine percent on the outstanding amount of $65,000 secured by the mortgage, within six months of the date of the closing. In the event that Murphy did not make all payments, upon a 10-day notice to cure, the plaintiffs were entitled to collect the full amount of the judgment awarded, together with interest and the costs of collection.
According to Murphy, she paid the plaintiffs in the underlying action the entire sum of $120,000, plus interest of $4,390, for a total of $124,390.
On or about August 1, 2000, a judgment was entered solely against Dillane and the corporation, in the amount of $100,000. On {**2 Misc 3d at 551}or about the same date, the plaintiffs in the underlying action assigned the judgment to Murphy. The assignment was recorded on October 23, 2000.
Thereafter, Murphy began executing on the judgment, receiving payments totaling $1,324.08 from Dillane's bank accounts. By execution dated March 7, 2003, Murphy sought to collect from Dillane the sum of $97,872.81, plus interest from August 1, 2000. A sheriff's sale of an investment real property owned by Dillane, and located in Queens, was scheduled for September 10, 2003 at 2:00 p.m.
This court (Price, J.) temporarily stayed all proceedings to enforce or collect the judgment and stayed the sheriff's sale, pending a hearing on Dillane's order to show cause. On October 21, 2003, the adjourned date of the motion, both attorneys stipulated in writing on the original order to show cause their consent to continue the stay pending the determination of the motion.

II. Order to Show Cause

Dillane seeks to vacate and set aside the judgment and, in effect, to permanently stay enforcement of the judgment and the sheriff's sale, asserting that: (1) Murphy is a codebtor who cannot collect on a judgment rendered against her; (2) there is no evidence that Murphy ever paid the judgment; and (3) pursuant to General Obligations Law § 15-108 and Rock v Reed-Prentice Div. of Package Mach. Co. (39 NY2d 34 [1976]), he is only liable to contribute 50% of the postjudgment settlement amount that Murphy actually paid to the plaintiffs in the underlying action.
Murphy opposes the order to show cause asserting that in addition to paying the amount due pursuant to the stipulation, she also paid: (1) legal bills of $14,200 pursuant to the joint retainer agreement which she and Dillane executed; (2) additional expenses including legal fees associated with the sale and refinance of her house in order to meet the terms of the stipulation; and (3) the sum of $5,000 to initiate the sheriff's sale. She urges that Dillane is liable for one half of the $124,390 that she paid on the judgment, and for these other amounts that she expended.

III. Decision

General Obligations Law § 15-108 (c) and CPLR 1402, by their terms, are applicable only to tort actions (see, e.g., Mitchell v New York Hosp., 61 NY2d 208 [1984]; Rock v Reed-Prentice Div. of Package Mach. Co., 39 NY2d 34 [1976]; Cover v Cohen, 113 {**2 Misc 3d at 552}AD2d 502 [1985]; see also, Trump Vil. Section 3 v New York State Hous. Fin. Agency, 307 AD2d 891 [2003]; Rothberg v Reichelt, 270 AD2d 760 [2000]; Edgewater Apts. v Flynn, 268 AD2d 227 [2000]; MDS Health Group v Carmichael, 258 AD2d 876 [1999]). As such, the provisions do not apply to the underlying action at issue which, apparently, was based upon the liability of Dillane and Murphy for amounts due on promissory notes.
Nonetheless, under the common-law and general equitable principles, a party who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares (see, Green Bus Lines v Consolidated Mut. Ins. Co., 74 AD2d 136 [1980], lv denied 52 NY2d 701 [1980]). Generally, all co-obligors must contribute equally in discharging their common obligation (see, Green Bus Lines v Consolidated Mut. Ins. Co., supra).
The availability of the common-law remedy of contribution, however, does not mean that a co-obligor/judgment debtor can pay the judgment, obtain an assignment of the judgment, and [*3]proceed to enforce the judgment against the joint judgment debtor.
"Where one of several defendants against whom there is a joint judgment, pays to the other party the entire sum due, the judgment becomes thereby extinguished, whatever may be the intention of the parties to the transaction. It is not in their power, by any arrangement between them, to keep the judgment on foot for the benefit of the party making the payment. If, therefore, in such a case, the latter take an assignment to himself, or, unless under special circumstances, even to a third person for his own benefit, the assignment is void and the judgment satisfied" (Harbeck v Vanderbilt, 20 NY 395, 397-398 [1859]).
Instead, the remedy of the co-obligor or joint debtor who pays the judgment is to commence a separate action against his codebtor for contribution (see, Townsend v Whitney, 75 NY 425, 429 [1878]; Booth v Farmers & Mechanics' Natl. Bank, 74 NY 228, 231 [1878]).[FN2]

Here, Murphy avers that she paid $124,390 in principal and interest pursuant to the stipulation. Assuming the truth of this assertion, {**2 Misc 3d at 553}the judgment was extinguished and should have been marked satisfied (see, CPLR 5020, 5021). The subsequent assignment of the judgment to Murphy was a nullity and, instead, Murphy is relegated to an action against Dillane for contribution (see, e.g., Leo v Levi, 304 AD2d 621 [2003]).
In such an action, Murphy may seek not only Dillane's proportionate share of the amount that Murphy paid on the judgment, but also contribution for any other joint or other liabilities for which she alleges Dillane is liable. The court makes no ruling herein on the merits of such an action or the propriety of the amounts claimed by Murphy.
Thus, to the extent that Dillane seeks to restrain Murphy, as assignee of the judgment, from executing on that judgment, and to permanently stay the previously scheduled sheriff's sale, his application is granted (see, Paz v Long Is. R.R., 241 AD2d 486 [1997]; CPLR 5240). That branch of Dillane's application which seeks to vacate the judgment and to stay all proceedings to collect on that judgment is denied as moot, as the judgment has been satisfied.

Conclusion

Accordingly, based upon the papers submitted to this court for consideration and the [*4]determinations set forth above, it is ordered that the branch of the order to show cause by the defendant David Dillane to vacate and set aside a judgment of this court (Posner, J.), dated July 12, 2000 and entered August 1, 2000 is denied; and it is further ordered that the branch of the order to show cause by the defendant David Dillane, in effect, to restrain the defendant Maureen Murphy, as assignee of the judgment, from enforcing or collecting on the judgment, and to permanently stay and enjoin a sheriff's sale scheduled for September 10, 2003 at 2:00 p.m. is granted to the extent that the defendant Maureen Murphy, as assignee of the judgment, is restrained from executing on that judgment, and the sheriff's sale scheduled for September 10, 2003 at 2:00 p.m. is permanently stayed and enjoined and, otherwise, that branch of the order to show cause is denied.

Footnotes

Footnote 1: By order dated April 30, 1996, the underlying action (Index No. 4598/95) was consolidated with a separate action (Index No. 4599/95) for purposes of joint trial.
Although Dillane and Murphy have not annexed any documents indicating the type of claims made against them in the underlying action, in the moving papers they repeatedly state that the action was to recover amounts due on the notes.

Footnote 2: Although the rule regarding the assignment of a judgment is different where the judgment is assigned to a co-obligor who is also a surety (see, e.g., Townsend v Whitney, supra; First Natl. Bank v Koriba, Inc., 89 AD2d 713 [1982]), Murphy has never contended that she was also a guarantor or surety of the underlying debt.